IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

THOMAS J. MUSTO, JR.,
    Plaintiff,
      v.

KATHRYN E. MACFARLAND and
SOUTH WOODS STATE PRISON,
    Defendants.

CIVIL NO. 05-4781 (NLH)(JS)

**OPINION**

**APPEARANCES:**

Greg Zeff
Zeff Law Firm, LLC
100 Century Parkway #305
Mt. Laurel, NJ 08054

    On behalf of plaintiff

Joseph M. Micheletti
Office of the Attorney General
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, NJ 08625

    On behalf of defendants

**HILLMAN,** District Judge

Presently before the Court is the motion of defendants for summary judgment on plaintiff's claims that defendants violated his constitutional rights when he was exposed to second-hand cigarette and cigar smoke while incarcerated.  For the reasons expressed below, defendants' motion will be granted.

**BACKGROUND**

Plaintiff, Thomas J. Musto, Jr., was an inmate at defendant South Woods State Prison (SWSP) from March 3, 2003 through February 23, 2004, and again from April 16, 2004 through December

14, 2005.  Plaintiff claims that SWSP, and SWSP's warden at the time, defendant Kathryn Macfarland, violated his Fourteenth Amendment due process right and his Eighth Amendment right to be free from cruel and unusual punishment when they allowed him to be exposed to second-hand smoke, or "environmental tobacco smoke" or "ETS," in his cell and in various common areas.  He claims that his exposure to ETS aggravated his asthma, and that defendants ignored his numerous complaints.  He seeks compensatory and punitive damages against defendants.

Defendants have moved for summary judgment on both of plaintiff's claims.  Plaintiff has opposed defendants' motion.

## DISCUSSION

### A.   Jurisdiction

Because plaintiff has brought claims pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights, this Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

### B.   Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ.

2

P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

C.   **Analysis**

   1.   **Claims against SWSP and Macfarland in her official capacity**

Defendants have moved to dismiss plaintiff's constitutional violation claims lodged against the prison and Macfarland, in her official capacity, on several bases.  First, defendants argue that plaintiff's claims for money damages against them are barred by the doctrine of sovereign immunity.  The Court agrees.  See Will v. Michigan Dept. of State Police, 491 U.S. 58, 66 (1989) (stating that § 1983 "provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties.  The Eleventh Amendment bars such suits unless the State has waived its immunity"); Quern v. Jordan, 440 U.S. 332, 342 (1979) (reaffirming "that a suit in federal court by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment"); Employees of Dept. of Public Health & Welfare v. Dept. of Public Health & Welfare, 411 U.S. 279, 280 (1973) (stating that even though the text of the Eleventh Amendment expressly bars suits in federal court against states by citizens of other states and foreign states, the Amendment has been broadly interpreted to provide immunity to an unconsenting state for "suits brought in federal courts by her own citizens as well"); see also Kentucky v. Graham, 473 U.S. 159, 165 (1985) (stating that suing a government

4

employee in his official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent"); Melo v. Hafer, 912 F.2d 628, 636 (3d Cir. 1990) (finding that the Eleventh Amendment has been interpreted to bar suits for monetary damages by private parties in federal court against a state, state agencies, or state employees sued in their official capacity).

Second, defendants argue that neither SWSP nor Macfarland, in her official capacity, can be sued pursuant to § 1983 because they are not "persons" under § 1983, which is a requirement for money damages under § 1983. Defendants are correct. See Will, 491 U.S. at 66, 71 (stating that a state is not a "person" within the meaning of § 1983, and a "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," and "[a]s such, it is no different from a suit against the State itself").

Finally, defendants argue that plaintiff's request for injunctive relief is moot, and otherwise without merit. Again, the Court agrees. The judicial doctrine of Ex Parte Young allows suits against states in federal court seeking prospective injunctive relief to proceed only against state officials acting in their official capacities. See Ex Parte Young, 209 U.S. 123 (1908). The exception created by Ex Parte Young has been interpreted to allow suits against state officials for prospective and declaratory

5

relief in order to end continuing violations of federal law. Balgowan v. State of New Jersey, 115 F.3d 214, 217 (3d Cir. 1997); see also Doe v. Division of Youth and Family Services, 148 F. Supp. 2d 462, 483 (D.N.J. 2001).  This doctrine is not applicable, however, if "the relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter," and, as when the state or state agency itself is named as the defendant, "a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief."  Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 101-02 (1984) (citations omitted).

In this case, plaintiff is no longer an inmate at SWSP, and Macfarland is no longer the warden of SWSP.  Thus, the Court cannot order Macfarland to cease violating plaintiff's Eighth and Fourteenth Amendment constitutional rights because plaintiff is not currently being exposed to second-hand smoke at SWSP, and even if he were, Macfarland is not the state official who can rectify that violation.[1]

Consequently, judgment must be entered in favor of SWSP and Macfarland, in her official capacity, on plaintiff's claims against

---

[1]Plaintiff argues that his injunction should be entered because he may return to SWSP at some point in the future. Although under certain circumstances claims for injunctive relief that have been mooted may still proceed because they are "capable of repetition, yet evading review," see, e.g., Weinstein v. Bradford, 423 U.S. 147 (1975), this is not such a case.

6

them.

### 2. Plaintiff's claims against Macfarland in her individual capacity

Macfarland has moved for judgment in her favor on plaintiff's claims against her in her individual capacity. In order to be liable for constitutional violation claims brought pursuant to § 1983, plaintiff must show that Macfarland had personal involvement in the alleged violations. Liability cannot be predicated solely on the operation of *respondeat superior*. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing Parratt v. Taylor, 451 U.S. 527, 537 n.3 (1981); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1082 (3d Cir. 1976)). Plaintiff can show personal involvement through evidence of personal direction, or of actual knowledge and acquiescence. Id.

Plaintiff has failed to produce any evidence to demonstrate that Macfarland had any involvement in plaintiff's exposure to second-hand smoke at the prison. In May 2001, SWSP instituted a smoking policy that allows inmates to smoke outside, but prohibits smoking inside. This policy, which was in effect during plaintiff's time at SWSP, was posted throughout the prison, was contained in the prisoners' handbook, and was disseminated to staff members. While plaintiff was housed at SWSP, 120 disciplinary charges were issued to inmates for violations of the policy.

The first time plaintiff formally complained about his

7

exposure to ETS was on July 8, 2005.[2]  Plaintiff filed a "routine inmate request," wherein he complained he was exposed to ETS while waiting in a holding area with 100 other inmates, while walking to and from work, and in the small walled-in yard with 200 other inmates.  (Def. Ex. F.)  On July 18, 2005, in response to plaintiff's complaint, SWSP employee Captain Dawson interviewed plaintiff about his complaints.  (Id.)  Dawson reviewed the smoking and tobacco policy with plaintiff, and told him that pursuant to the policy the only corrective action available was for the confiscation of the tobacco when it exceeded allowable limits. (Id.)  Dawson asked plaintiff what corrective action plaintiff suggested, and plaintiff responded the "he didn't know, just wanted to complain."  (Id.)  Although plaintiff was permitted to appeal this decision--as indicated on the inmate request form--he did not do so.  (Id.)

Plaintiff alleges that he never spoke directly to Macfarland about his exposure to ETS, but that he sent her six letters about being exposed to smoke in the yard, while going to and from work, and by the telephones.  (Pl. Dep. at 44-45.)  He states that he never received a response from Macfarland.  (Id. at 45.)  Plaintiff has not produced any copies of these letters because he claims they were lost or stolen during his transfer out of SWSP.  (Id. at 45-

---

[2]Plaintiff explains that he did not formally complain about his cell mates smoking because "you can't go ratting on a guy and say he's smoking."  (Pl. Dep. at 23.)

46.)

At this stage in the case, plaintiff must do more than rely upon his unsupported allegations in order to prove his claims that Macfarland was personally involved in plaintiff's improper exposure to ETS.  See Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).  Simply claiming to have written complaint letters to Macfarland does not evidence the "personal direction" or "actual knowledge and acquiescence" of Macfarland to show that she violated his constitutional rights.

Even taking as true, however, that plaintiff wrote Macfarland letters about his exposure to ETS, and that she received and read them, the letters do not show that Macfarland acquiesced to the violations of the smoking policy.[3]  Indeed, during plaintiff's time at SWSP and under Macfarland's helm, 120 disciplinary charges were issued for smoking violations.  Moreover, plaintiff had the ability to follow a formal complaint and appeal process, rather than send the warden informal complaint letters, but he failed to do so.[4]

---

[3]It is not clear when during his time at SWSP plaintiff sent Macfarland his complaint letters.  Any claims arising before October 5, 2003 are barred by the statute of limitations. Wallace v. Kato, 549 U.S. 384, 387 (2007) (explaining that for claims brought under 42 U.S.C. § 1983, the statute of limitations is two years).

[4]Because of plaintiff's failure to follow the formal complaint process, defendants argue that plaintiff's claims are barred for his failure to exhaust his administrative remedies. Federal law prohibits a prisoner from bringing any action relating to his confinement until administrative remedies are exhausted.  See 42 U.S.C. § 1997e(a).  The exhaustion requirement

To prove his Eighth Amendment claim, plaintiff must show that Macfarland was deliberately indifferent to his serious medical need. "[D]eliberate indifference is demonstrated '[w]hen . . . prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment.'" Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987). To prove his Fourteenth Amendment claim, plaintiff must show (1) that Macfarland deprived him of a protected interest in life, liberty or property, and (2) that the deprivation occurred without due process of law. Burns v. PA Dept. of Correction, 544 F.3d 279, 285 (3d Cir. 2008) (citations omitted). Plaintiff has not provided sufficient proof to show that Macfarland had any personal involvement in denying him treatment for a serious medical need, or in depriving him of due process.[5] Consequently, summary

_____

is mandatory, and applies "even where the relief sought . . . cannot be granted by the administrative process." Woodford v. Ngo, 126 S. Ct. 2378, 2382-83 (2006) (citing Booth v. Churner, 532 U.S. 731, 734 (2001)). Additionally, exhaustion of available administrative remedies is required for any suit challenging prison conditions, not just for suits under § 1983. Id. at 2383 (citing Porter v. Nussle, 534 U.S. 516, 524 (2002)). The argument that exhausting administrative remedies would be futile is completely precluded. Nyhuis v. Reno, 204 F.3d 65, 71 (3d Cir. 2000). This Court finds that plaintiff's failure to exhaust his administrative remedies is another basis for finding in favor of defendants.

[5]Plaintiff alleges that Macfarland transferred him to another prison "real fast to get me out of South Woods." (Pl. Dep. at 49.) Plaintiff does not dispute, however, that he requested the prison transfer, and in his transfer request, he

judgment must be entered in Macfarland's favor on plaintiff's claims against her in her individual capacity.

## CONCLUSION

For the reasons expressed above, defendants' motion for summary judgment must be granted.  An appropriate Order will be entered.


Date: April 6, 2011                          s/ Noel L. Hillman

At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.

---

stated that he desired a transfer in order to be closer to home. (Def. Ex. A.)  Plaintiff does not mention ETS exposure as a reason for his transfer.  Thus, to the extent that plaintiff has alleged any retaliation claim against Macfarland, that claim fails.  See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) ("In order to establish a retaliation claim, a prisoner must show that he engaged in a constitutionally protected activity, that he suffered an adverse action at the hands of prison officials, and that there was a causal link between the two.").